**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| JENNIFER McCREARY, on behalf of herself and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | )   Case No. |
| | ) |
| **v.** | ) |
| | ) |
| FILTERS FAST LLC, | ) |
| | ) |
| Defendant, | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Jennifer McCreary, individually and on behalf of the Classes defined below of similarly situated persons, alleges the following against Filters Fast LLC ("Filters Fast" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. There are more than 100 putative class members.

2. This Court has personal jurisdiction over Defendant because it is a domestic limited liability company organized under the laws of the State of North Carolina, regularly conducts business in North Carolina, has sufficient minimum contacts in North Carolina (including its headquarters and principal place of business), and intentionally avails itself of this jurisdiction by

1

marketing and selling products and services in North Carolina via its ecommerce site www.filtersfast.com.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, including (upon information and belief) the data security incident involving Defendant's website. Defendant caused harm to Plaintiff and Class Members through its actions in this District.

## THE DATA BREACH

4.      On August 25, 2020, the electronic data security company RapidSpike published a blog post entitled "Filter Company Allowed 3.4 Million Customers to Shop on Hacked Site."  See https://www.rapidspike.com/blog/filters-fast-allowed-3-4-million-customers-to-shop-on-hacked-site/ (last accessed October 27, 2020).

5.      The blog post stated that "Filters Fast knowingly allowed approximately 3.4 Million customers to shop on their compromised website for over 5 months, in a year-long data breach." (hereinafter the "Data Breach").

6.      Filters Fast customers across the United States have suffered real and imminent harm as a direct consequence of Defendant's conduct, which includes: (a) refusing to take adequate and reasonable measures to ensure its data systems were protected; (b) refusing to take available steps to prevent the breach from happening; (c) failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard customers' personal and financial information; and (d) failing to provide timely and adequate notice of the data breach.

7.     As a result of the Data Breach, the personal information of approximately 3.4 million Filters Fast customers, including, but may not be limited to, payment card data ("PCD"), has been exposed to criminals for misuse.

8.     The injuries suffered by Plaintiff and the proposed Classes as a direct result of the Data Breach include, *inter alia*:

a.     Unauthorized charges on their payment card accounts;

b.     Theft of their personal and financial information;

c.     Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.     Loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

e.     Costs associated with time spent and the loss of productivity from taking time to address and attempting to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the data breach;

Case 3:20-cv-00595-FDW-DCK     Document 1     Filed 10/27/20     Page 3 of 37

f.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information and PCD being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class Members' information on the Internet black market;

g.    Damages to and diminution in value of their personal and financial information entrusted to Filters Fast for the sole purpose of making purchases from Filters Fast and with the mutual understanding that Filters Fast would safeguard Plaintiff's and Class Members' data against theft and not allow access to and misuse of their information by others;

h.    Money paid to Filters Fast during the period of the data breach in that Plaintiff and Class Members would not have purchased from Filters Fast had Defendant disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' personal information and PCD and had Filters Fast provided timely and accurate notice of the data breach;

i.    Continued risk to their personal information and PCD, which remains in the possession of Filters Fast and which is subject to further breaches so long as Filters Fast continues to fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data in its possession.

9.    Examples of the harms to Filters Fast customers as a direct and foreseeable consequence of its conduct include the experience of the representative Plaintiff, which is described below.

## PARTIES

10.     Plaintiff Jennifer McCreary is a resident of Hillsboro, Virginia. She is (and was during the period of the data breach) a citizen of the Commonwealth of Virginia.

11.     Defendant Filters Fast is a domestic limited liability company organized under the laws of the State of North Carolina, with a principle place of business at 5905 Stockbridge Drive, Monroe, NC 28110-8106.

12.     On July 4, 2020, Plaintiff purchased replacement Maytag appliance water filters from Defendant's website, order number XXXX3926.  See Email Confirmation of Purchase, attached hereto as Exhibit A.

13.     Plaintiff used one of her credit cards to make this purchase.

14.     Subsequent to making this purchase, Plaintiff received a letter dated August 18, 2020 entitled Notice of Data Breach from the Defendant.  See Notice of Data Breach, attached hereto as Exhibit B.

15.     The Notice of Data Breach letter informed Plaintiff that unauthorized individuals may have gained access to her name, shipping and billing address, and PCD (collectively, the "Private Information") that she used to make her purchase on Defendant's website.  See Exhibit B.

16.     Since her purchase on Defendant's website, Plaintiff has received security alerts that her personal information was released onto the Dark Web.  She was forced to take time to put a security freeze on all credit report companies.  As a result, there were several extra steps required when trying to get approved for credit with a lower interest rate. The obstacles were so great that Plaintiff had to keep her higher interest rates rather than trying to resolve the issues preventing her from applying for lower credit rates.

17.     Plaintiff would not have used her credit card to make purchases from the Filters Fast website—indeed, she would not have shopped with Filters Fast at all during the period of the data breach—had Filters Fast disclosed that it lacked adequate computer systems and data security practices to safeguard customers' personal and financial information from theft, and that it was subject to an ongoing data breach at the time Plaintiff made her purchases.  Filters Fast also failed to provide Plaintiff with timely and accurate notice of the data breach.

18.     Plaintiff suffered actual injury from having her personal information and PCD compromised and/or stolen as a result of the Data Breach.

19.     Plaintiff suffered actual injury and damages in paying money to and purchasing products from Filters Fast during the data breach that she would not have paid or purchased had Filters Fast disclosed that it lacked computer systems and data security practices adequate to safeguard customers' personal and financial information and had Filters Fast provided timely and accurate notice of the Data Breach.

20.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her personal and financial information—a form of intangible property that the Plaintiff entrusted to Filters Fast for the purpose of making purchases at FiltersFast.com and which was compromised in and as a result of the Data Breach.

21.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by her personal and financial information being placed in the hands of criminals who have already misused such information stolen in the Data Breach via sale of Plaintiff's and Class Members' personal and financial information on the Internet black market.

22.     Plaintiff suffered actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

23.     Plaintiff suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

24.     Plaintiff has a continuing interest in ensuring that her private information, which remains in the possession of Filters Fast, is protected and safeguarded from future breaches.

25.     Plaintiff was not reimbursed for the loss of use of, loss of access to, or restrictions placed upon her accounts and the resulting loss of use of her own funds that occurred as a result of the Data Breach.

## STATEMENT OF FACTS

26.     FiltersFast.com sells a variety of home filtration products. The company is based in North Carolina, USA, and according to SimilarWeb, the company averages approximately 574,190 website visitors each month.

27.     In a Notice of Data Breach sent to customers, the company explains that in late February 2020, "Filters Fast was made aware of a possible data security incident affecting its e-commerce website:"

> ### <u>What Happened</u>
> In late February 2020, we were informed of a possible data security incident affecting our website. We immediately began investigating the potential issue. Our investigation included hiring an outside, expert forensics firm to analyze our systems and determine if there was a breach of our security. On July 20, 2020, that investigation revealed that attackers had succeeded in adding malicious code to our website on July 15, 2019, which allowed unauthorized individuals to capture certain information during the checkout process. We removed that malicious code on July 10, 2020, during an unrelated update of our website ending the unauthorized access to our website.

**What Information Was Involved?**
On July 20, 2020, we confirmed the possibility that unauthorized individuals may have gained access to your name, shipping and billing address, and the payment card information used to make your purchase on FiltersFast.com.

***None of your other personal information was at risk of being impacted during this incident.***

28.     Despite knowledge of the data security incident, the company did not take its website offline to investigate, and therefore customers who were unaware of any data security issues were able to continue to shop on the compromised website.

29.     As one internet security researcher commented, "It is irresponsible for companies to knowingly allow their customers to shop on a website that is compromised."[1]

30.     Filters Fast commissioned an investigation into the incident, and the investigation revealed on July 20, 2020 "…that attackers had succeeded in adding malicious code to the Filters Fast website on July 15, 2019, which allowed unauthorized individuals to capture certain information during the checkout process."

31.     This means that any customer who purchased from the website between July 2019 and July 2020 most likely had their personal and credit card information stolen.  Stolen information included names, shipping and billing addresses, and payment card information.

32.     The malicious code was removed from the Filters Fast website on July 10, 2020, "during an unrelated update of the website, ending the unauthorized access."

33.     By the time the malicious code was removed, it is estimated that over 3.4 million customers shopped on the Filters Fast site from February – July 2020, putting each of those customers at risk of data theft (provided they made a purchase).

---

[1] https://www.rapidspike.com/blog/filters-fast-allowed-3-4-million-customers-to-shop-on-hacked-site/ (last accessed October 27, 2020).

34.     While it is unknown exactly how many customers this data breach has affected, in a series of notification letters to various states' Attorney Generals, Filters Fast states that they are notifying approximately 26,093 individuals who reside in California, 755 individuals in North Dakota, and 3,272 individuals in Iowa of the cyber-attack. Therefore, there are at the very least 30,000 victims in this attack.

35.     Filters Fast also substantially delayed providing notice of this data breach.  Despite finding out about the data security incident in late February 2020, and announcing the removal of the malicious code in July 2020, notice was not sent to Filters Fast customers until August 14-18, 2020, a delay of either 5 ½ months or one month.

36.     While Filters Fast claims in its Notice of Data Breach that "we think it is unlikely that the unauthorized individuals could use the information collected to steal your identity," the Plaintiff in this case already experienced substantial identity theft and financial fraud, and there were multiple reports posted online of other Filters Fast customers noticing unauthorized purchases on their credit cards.

37.     Filters Fast also claims in its Notice of Privacy Practices that it encrypts all payment data.  However, this contention is belied by the facts of this case – specifically the release of Filters Fast customers' unencrypted Private Information onto the Dark Web, including that of Plaintiff.

38.     In a debit or credit card purchase transaction, card data must flow through multiple systems and parties to be processed. Generally, the cardholder presents a credit or debit card to  an e-commerce retailer (through an e-commerce website) to pay for merchandise. The card is then "swiped" and information about the card and the purchase is stored in the retailer's computers and then transmitted to the acquirer or processor (i.e., the retailer's bank). The acquirer relays the transaction information to the payment card company, who then sends the information to the issuer

9

(i.e., cardholder's bank). The issuer then notifies the payment card company of its decision to authorize or reject the transaction. See graphic below:[2]



| 1 | The consumer selects a card for payment. The cardholder data is entered into the merchant's payment system, which could be the point-of-sale (POS) terminal/software or an e-commerce website. |
| 2 | The card data is sent to an acquirer/payment processor, whose job it is to route the data through the payments system for processing. With e-commerce transactions, a "gateway" provider may provide the link from the merchant's website to the acquirer. |
| 3 | The acquirer/processor sends the data to the payment brand (e.g. Visa, MasterCard, American Express, etc.) who forward it to the issuing bank/issuing bank processor |
| 4 | The issuing bank/processor verifies that the card is legitimate, not reported lost or stolen, and that the account has the appropriate amount of credit/funds available to pay for the transaction. |
| 5 | If so, the issuer generates an authorization number and routes this number back to the card brand. With the authorization, the issuing bank agrees to fund the purchase on the consumer's behalf. |
| 6 | The card brand forwards the authorization code back to the acquirer/processor. |
| 7 | The acquirer/processor sends the authorization code back to the merchant. |
| 8 | The merchant concludes the sale with the customer. |

39.     There are two points in the payment process where sensitive cardholder data is at risk of being exposed or stolen: pre-authorization when the merchant has captured a consumer's data and it is waiting to be sent to the acquirer; and post-authorization when cardholder data has been sent back to the merchant with the authorization response from the acquirer, and it is placed into some form of storage in the merchant's servers.

---

[2] Source: "Payments 101: Credit and Debit Card Payments," a white paper by First Data, at: https://www.firstdata.com/downloads/thought-leadership/payments101wp.pdf     (last     accessed October 27, 2020).

40.    Encryption mitigates security weaknesses that exist when cardholder data has been stored, but not yet authorized, by using algorithmic schemes to transform plain text information into a non-readable format called "ciphertext." By scrambling the payment card data the moment it is "swiped," hackers who steal the data are left with useless, unreadable text in the place of payment card numbers accompanying the cardholder's personal information stored in the retailer's computers.

41.    While Filters Fast claims that it encrypts all payment data, the financial fraud suffered by Plaintiff and other customer demonstrates that Filters Fast chose not to invest in the technology to encrypt payment card data (PCD) at point-of-sale to make its customers' data more secure; failed to install updates, patches, and malware protection or to install them in a timely manner to protect against a data security breach; and/or failed to provide sufficient control employee credentials and access to computer systems to prevent a security breach and/or theft of PCD.

42.    While Filters Fast purports to offer its customers a year of free credit monitoring after the data breach, it provides a very short time for customers to sign up for credit monitoring service – until November 14, 2020, or less than three (3) months after notices to some customers were even sent (with notices being mailed beginning on August 14, 2020, and continuing until August 18, 2020).  Of course, the notices were also mailed during a time frame when the struggles of the US Postal Service to provide timely delivery are well-publicized, and this further limits the amount of time that customers have to sign up for the offered credit monitoring.

43.     In any event, credit monitoring is of no actual value to customers as a preventative measure because it is reactionary—it does nothing to prevent fraud in the first instance. As reported on Krebs:[3]

> [Credit monitoring services] are basically PR vehicles for most of the breached companies who offer credit report monitoring to potentially compromised consumers… it does absolutely nothing to compensate for the fact that a criminal stole credit card mag stripe account… [Credit monitoring services] only give consumers limited help with a very small percentage of the crimes that can be inflicted on them… [a]nd consumers can get most of that limited help for free via the government website or free monitoring from a breached entity where their data inevitably was compromised.

44.     As reported in the *Chicago Tribune*, retailers offering credit monitoring services and instructing their customers to check their credit reports in the wake of a data breach is "bad advice" because "[p]ayment card breaches have nothing to do with credit reports."[4] As one security expert noted, offering credit monitoring "seems to be the knee-jerk reaction" after a breach but "makes no sense at all."[5] The biggest concern is that credit monitoring offers customers a false sense of security but in reality offers little protection once the customer's personal information is exposed.[6]

45.     A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal information:[7]

---

[3] "Are Credit Monitoring Services Worth It?" Krebs on Security, 03/19/14, at https://krebson security.com/2014/03/are-credit-monitoring-services-worth-it/comment-page-1/ (last accessed October 27, 2020).

[4] "Why credit monitoring will not help you after a data breach," Chicago Tribune, 08/15/14, at https://www.chicagotribune.com/business/chi-why-credit-monitoring-will-not-help-you-after-a-data-breach-20140815-story.html (last accessed October 27, 2020).
[5] *Id.*
[6] *Id.*
[7] Source: "Credit Card and ID Theft Statistics" by Jason Steele, 10/24/17, at: https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited October 27, 2020).



Americans' expenses/disruptions as a result of criminal activity in their name (2016)

| | |
|---|---|
| I had to request government assistance | 29.5% |
| I had to borrow money | 60.7% |
| Had to use my savings to pay for expenses | 32.8% |
| Couldn't qualify for a home loan | 32.8% |
| I lost my home/place of residence | 31.1% |
| I couldn't care for my family | 34.4% |
| Had to rely on family/friends for assistance | 49.2% |
| Lost out on an employment opportunity | 44.3% |
| Lost time away from school | 19.7% |
| Missed time away from work | 55.7% |
| Was generally inconvenienced | 73.8% |
| Other | 23% |
| None of these | 3.3% |

Source: Identity Theft Resource Center

creditcards·com

Plaintiff and the Class have experienced one or more of these harms as a result of the data breach.

46.    What's more, theft of Private Information is also gravely serious. PII is a valuable property right.  Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

47.    Filters Fast's offer of one year of credit monitoring to customers whose personal information was exposed is also inadequate because it does not continue long enough. There may be a time lag between when harm occurs versus when it is discovered, and also between when personal information or PCD is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

13

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

48. Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

49. There is a strong probability that entire batches of stolen information have been dumped on the black market or are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

50. Plaintiff and members of the classes defined below have or will suffer actual injury as a direct result of Filters Fast's data breach. In addition to fraudulent charges and damage to their credit, many victims spent substantial time and expense relating to:

       a.     Finding fraudulent charges;

       b.     Canceling and reissuing cards;

       c.     Purchasing credit monitoring and identity theft prevention;

       d.     Addressing their inability to withdraw funds linked to compromised accounts;

       e.     Removing withdrawal and purchase limits on compromised accounts;

       f.     Taking trips to banks and waiting in line to obtain funds held in limited accounts;

---

[8] "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" by GAO, June 2007, at: https://www.gao.gov/assets/270/262904.html (last accessed October 27, 2020).

14

g.    Spending time on the phone with or at the financial institution to dispute fraudulent charges;

h.    Resetting automatic billing instructions; and

i.    Paying late fees and declined payment fees imposed as a result of failed automatic payments.

51.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

52.    Plaintiff's PII was compromised as a direct and proximate result of the Data Breach.

53.    As a direct and proximate result of the Data Breach, Plaintiff's PII was exfiltrated and is in the hands of identity thieves and criminals, as evidenced by the identity theft and fraud perpetrated against Plaintiff described above.

54.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered actual identity theft and fraud.

55.    As a direct and proximate result of Filters Fast's conduct, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff now has to take the time and effort to mitigate the actual and potential impact of the data breach on her everyday life, including placing "freezes" and "alerts" with credit reporting agencies, contacting her financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

56.    Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of Filters Fast is protected from further breaches by the implementation of security measures and safeguards.

57. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

58. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

59. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

60. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The implied contractual bargain entered into between Plaintiff and Filters Fast included Defendant's contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiff and the Class Members did not get what they paid for.

61. Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

62. Plaintiff and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

      a.    Trespass, damage to and theft of their personal property including personal information and PCD;

      b.    Improper disclosure of their personal information and PCD property;

      c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by customers' personal information and PCD being

placed in the hands of criminals and having been already misused via the sale of such information on the Internet black market;

d.    Damages flowing from Filters Fast's untimely and inadequate notification of the data breach;

e.    Loss of privacy suffered as a result of the data breach;

f.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.    Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market; and

h.    The loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money customers were permitted to obtain from their accounts.

63.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

64.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and are at an imminent and increased risk of future harm.

65.    The substantial delay in providing notice of the Data Breach, and continuing to operate the compromised e-commerce website even after discovery of the malware infecting that site, deprived Plaintiff and the Class Members of the ability to promptly mitigate potential adverse

consequences resulting from the Data Breach. As a result of Defendant's delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiff and Class Members was and has been driven even higher.

## CLASS ALLEGATIONS

66.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class").

67.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Nationwide Class:**

All residents of the United States whose personal information was compromised as a result of the Data Breach first disclosed by Filters Fast in August 2020.

**Virginia Subclass:**

All residents of Virginia whose personal information was compromised as a result of the Data Breach first disclosed by Filters Fast in August 2020.

68.     Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

69.     Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

70.     Numerosity. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time,

based on information and belief, the Class consists of approximately 3.4 million customers of Filters Fast whose data was compromised in the Data Breach.

71.     Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     Whether Filters Fast engaged in the conduct alleged herein;

b.     Whether Filters Fast's conduct constituted Deceptive Trade Practices (as defined below) actionable under the applicable consumer protection laws;

c.     Whether Filters Fast had a legal duty to adequately protect Plaintiff's and Class Members' personal information;

d.     Whether Filters Fast breached its legal duty by failing to adequately protect Plaintiff's and Class Members' personal information;

e.     Whether Filters Fast had a legal duty to provide timely and accurate notice of the data breach to Plaintiff and Class Members;

f.     Whether Filters Fast breached its duty to provide timely and accurate notice of the data breach to Plaintiff and Class Members;

g.     Whether and when Filters Fast knew or should have known that Plaintiff's and Class Members' personal information stored on its computer systems was vulnerable to attack;

h.     Whether Plaintiff and Class Members are entitled to recover actual damages and/or statutory damages; and

i.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

72. <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

73. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including data breach class actions.

74. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

75. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management

difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

76.     Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Filters Fast has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

77.     Finally, all members of the purposed Classes are readily ascertainable. Filters Fast has access to addresses and other contact information for millions of members of the Classes, which can be used to identify Class Members.

**COUNT I**
**VIOLATION OF NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(on behalf of Plaintiff and the Nationwide class)**

78.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

79.     Plaintiff and members of the Nationwide Class (the "Class" for purposes of this claim) are consumers who used their payment cards to purchase products or services from Filters Fast primarily for personal, family, or household purposes.

80.     Filters Fast is headquartered and engaged in business in North Carolina. Filters Fast's response to, and corporate decisions surrounding data security and its response to the data breach were made from and in North Carolina.

81.     North Carolina, which seeks to protect the rights and interests of North Carolinians and others against a company doing business in North Carolina, has an interest in the claims of Plaintiff and the Class and is intimately concerned with the claims and outcome of this litigation. Accordingly, Plaintiff and the Class assert claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq.

82.     Plaintiff and the Class entrusted Filters Fast with their personal information.

83. As alleged herein this Complaint, Filters Fast engaged in unfair or deceptive acts or practices in the conduct of consumer transactions, including the following, in violation of the UDTPA:

     a.    Failure to maintain the security of payment card information;

     b.    Failure to maintain adequate computer systems and data security practices to safeguard payment card information and other personal information;

     c.    Failure to disclose that its computer systems and data security practices were inadequate to safeguard payment card information and other personal information from theft;

     d.    Continued acceptance of payment card and storage of payment card and other personal information after Filters Fast knew or should have known of the security vulnerabilities of the systems that were exploited in the data breach; and

     e.    Allowing unauthorized persons to have access to and make unauthorized charges to its customers' payment card accounts.

84. Filters Fast knew or should have known that its computer systems and data security practices were inadequate to safeguard the personal information of Plaintiff and Class Members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

85. As a direct and proximate result of Filters Fast's violation of the UDTPA, Plaintiff and Class Members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the personal information of Plaintiff and the Class; damages arising from

Plaintiff's inability to use their debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, inter alia, contacting their financial institutions to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity, and other damages from the exposure of their personal information, which may take months if not years to discover and detect. The nature of other forms of economic damage and injury is certainly impending.

86.     Also as a direct result of Filters Fast's knowing violation of the UDTPA, Plaintiff and the Class are entitled to damages as well as injunctive relief, including, but not limited to:

a.     Ordering that Filters Fast engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on its systems on a periodic basis, and ordering Filters Fast to promptly correct any problems or issues detected by such third-party security auditors;

b.     Ordering that Filters Fast engage third-party security auditors and internal personnel to run automated security monitoring;

c.     Ordering that Filters Fast audit, test, and train its security personnel regarding any new or modified procedures;

d.     Ordering that Filters Fast segment customer data by, among other things, creating firewalls and access controls so that if one area of Filters Fast is

compromised, hackers cannot gain access to other portions of Filters Fast's systems;

e. Ordering that Filters Fast purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

f. Ordering that Filters Fast conduct regular database scanning and securing checks;

g. Ordering that Filters Fast routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach, and

h. Ordering Filters Fast to meaningfully educate its customers about the threats they face as a result of the loss of personal information to third parties, as well as the steps its customers must take to protect themselves.

87.    Plaintiff and the Class are entitled to a judgment against Filters Fast for actual and consequential damages, treble damages and attorneys' fees pursuant to the OCPA, costs, and such other further relief as the Court deems just and proper.

## COUNT II
### NEGLIGENCE
**(on behalf of Plaintiff and the Nationwide class, or,
alternatively, Plaintiff and the Virginia subclass)**

88.    Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

89.    Filters Fast solicited, gathered, and stored personal information, including PCD, of Plaintiff and the Nationwide Negligence Class or, alternatively, the Virginia Negligence Subclass (collectively, the "Class" as used in this Count) to facilitate sales transactions.

90.    Filters Fast knew, or should have known, of the risks inherent in collecting and storing the personal information of Plaintiff and the Class Members and the importance of

adequate security. Filters Fast received warnings that hackers routinely attempted to access personal information, and PCD in particular, without authorization. Filters Fast also knew about numerous, well-publicized data breaches by other national retailers.

91.     Filters Fast owed duties of care to Plaintiff and the Class Members whose personal information was entrusted to it. Filters Fast's duties included the following:

a.     To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting personal information and PCD in its possession;

b.     To protect customers' personal information and PCD using reasonable and adequate security procedures and systems that are compliant with the PCI-DSS standards and consistent with industry-standard practices;

c.     To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, and

d.     To promptly notify Plaintiff and Class Members of the data breach.

92.     By collecting and storing this data in its computer property, and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Plaintiff and Class Members' Private Information held within it—to prevent disclosure of the Private Information, and to safeguard the Private Information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

93.     Because Filters Fast knew that a breach of its systems would damage millions of its customers, including Plaintiff and Class Members, it had a duty to adequately protect their personal information.

94.     Filters Fast owed a duty of care not to subject Plaintiff and the Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

95.     According to North Carolina law, Filters Fast had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' personal information.  *See*  N.C. Gen. Stat. § 75–60 *et seq*.

96.     Filters Fast knew, or should have known, that its computer systems did not adequately safeguard the personal information of Plaintiff and the Class Members.

97.     Filters Fast breached its duties of care by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the personal information of Plaintiff and the Class Members.

98.     Filters Fast breached its duties of care by failing to provide prompt notice of the data breach to the persons whose personal information was compromised.

99.     Filters Fast acted with reckless disregard for the security of the personal information of Plaintiff and the Class Members because Filters Fast knew or should have known that its computer systems and data security practices were not adequate to safeguard the personal information that that it collected and stored, which hackers were attempting to access.

100.     Filters Fast acted with reckless disregard for the rights of Plaintiff and the Class Members by failing to provide prompt and adequate notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use the personal information compromised in the data breach.

101.     Filters Fast had a special relationship with Plaintiff and the Class Members. Plaintiff's and the Class Members' willingness to entrust Filters Fast with their personal

information was predicated on the understanding that Filters Fast would take adequate security precautions. Moreover, only Filters Fast had the ability to protect its systems (and the personal information that it stored on them) from attack.

102. Filters Fast own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their personal information. Filters Fast's misconduct included failing to:

    a.    Secure its e-commerce website;

    b.    Secure access to its servers;

    c.    Comply with industry standard security practices;

    d.    Follow the PCI-DSS standards;

    e.    Encrypt PCD at the point-of-sale and during transit;

    f.    Employ adequate network segmentation;

    g.    Implement adequate system and event monitoring;

    h.    Utilize modern payment systems that provided more security against intrusion;

    i.    Install updates and patches in a timely manner, and

    j.    Implement the systems, policies, and procedures necessary to prevent this type of data breach.

103. Filters Fast also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and the Class Members' personal information and promptly notify them about the data breach.

104. Filters Fast breached the duties it owed to Consumer Plaintiff and Class Members in numerous ways, including:

a. By creating a foreseeable risk of harm through the misconduct previously described;

b. By failing to implement adequate security systems, protocols and practices sufficient to protect their personal information both before and after learning of the data breach;

c. By failing to comply with the minimum industry data security standards, including the PCI-DSS, during the period of the data breach, and

d. By failing to timely and accurately disclose that the personal information of Plaintiff and the Class had been improperly acquired or accessed.

105. But for Filters Fast's wrongful and negligent breach of the duties it owed Plaintiff and the Class Members, their personal and financial information either would not have been compromised or they would have been able to prevent some or all of their damages.

106. As a direct and proximate result of Filters Fast's negligent conduct, Plaintiff and the Class Members have suffered damages and are at imminent risk of further harm.

107. The injury and harm that Plaintiff and Class Members suffered (as alleged above) was reasonably foreseeable.

108. The injury and harm that Consumer Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Filters Fast's negligent conduct.

109. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
### NEGLIGENCE *PER SE*
**(on behalf of Plaintiff and the Nationwide class or,
alternatively, Plaintiff and the Virginia subclass)**

110. Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

111.    Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Filters Fast had a duty to provide fair and adequate computer systems and data security to safeguard the personal information, including PCD, of Plaintiff and the Nationwide Class ("the Class," for purposes of this count).

112.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Filters Fast, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also form part of the basis of Filters Fast's duty in this regard.

113.    Filters Fast solicited, gathered, and stored personal information, including PCD, of Plaintiff and the Nationwide Negligence *Per Se* Class or, alternatively, the Virginia Negligence *Per Se* Subclass (collectively, the "Class" as used in this Count) to facilitate sales transactions that affect commerce.

114.    Filters Fast violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiff and the Class and not complying with applicable industry standards, as described herein.

115.    Filters Fast's violation of the FTCA constitutes negligence *per se*.

116.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

117.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

118. As a direct and proximate result of Filters Fast's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending.

119. Filters Fast breached its duties to Plaintiff and the Class under these states' laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class' personal information.

120. Filters Fast's violation of the FTCA constitutes negligence *per se*.

121. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

122. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

123. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiff and the Nationwide class, or,**
**alternatively, Plaintiff and the Virginia subclass)**

124.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

125.     When Plaintiff and the members of the Nationwide class or, alternatively, the members of the Virginia Subclass (collectively, the "Class" as used in this Count), provided their personal information to Filters Fast in making purchases on the FiltersFast.com website, they entered into implied contracts by which Filters Fast agreed to protect their personal information and timely notify them in the event of a data breach.

126.     Filters Fast invited its customers, including Plaintiff and the Class, to make purchases on the FiltersFast.com website using payment cards in order to increase sales by making purchases more convenient.

127.     An implicit part of the offer was that Filters Fast would safeguard the personal information using reasonable or industry-standard means and would timely notify Plaintiff and the Class in the event of a data breach.

128.     Filters Fast also affirmatively represented that it protected the Private Information of Plaintiff and the Class in several ways:

**Security**

We take precautions to protect your information. When you submit sensitive information via the website, your information is protected both online and offline.

Sensitive information, such as credit card data, that is collected is encrypted and transmitted to us in a secure way. You can verify this by looking for a closed lock icon at the bottom of your web browser or looking for "https" at the beginning of the address of the web page.

While we use encryption to protect sensitive information transmitted online, we also protect your Information offline. Only employees

31

who need the information to perform a specific job (for example, billing or customer service) are granted access to personally identifiable information. The computers/servers in which we store personally identifiable information are kept in a secure environment here in the USA.[9]

129. Based on the implicit understanding and also on Filters Fast's representations, Plaintiff and the Class accepted the offers and provided Filters Fast with their personal information by using their payment cards in connection with purchases on the FiltersFast.com website during the period of the data breach.

130. Filters Fast manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiff's and Class Members' Private Information through, among other things, its Privacy Notice.

131. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

132. Plaintiff and Class Members would not have provided their personal information to Filters Fast had they known that Filters Fast would not safeguard their personal information as promised or provide timely notice of a data breach.

133. Plaintiff and Class Members fully performed their obligations under the implied contracts with Filters Fast.

134. Filters Fast breached the implied contracts by failing to safeguard Plaintiff's and Class Members' personal information and failing to provide them with timely and accurate notice when their personal information was compromised in the data breach.

---

[9] https://www.filtersfast.com/termsAndCond.asp (last accessed October 27, 2020).

135.     The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Filters Fast's breaches of its implied contracts with them.

**COUNT V**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiff and the Nationwide class, or,**
**alternatively, Plaintiff and the Virginia subclass)**

136.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

137.     This count is plead in the alternative to Count IV above.

138.     Plaintiff and members of the Nationwide class or, alternatively, the members of the Virginia Subclass (collectively, the "Class" as used in this Count), conferred a monetary benefit on Filters Fast. Specifically, they made purchases from Filters Fast and provided Filters Fast with their personal information by using their payment cards for the purchases that they would not have made if they had known that Filters Fast did not provide adequate protection of their personal information.

139.     Filters Fast knew that Plaintiff and the Class conferred a benefit on FiltersFast.com. Filters Fast profited from their purchases and used their personal information for its own business purposes.

140.     Filters Fast failed to secure the Plaintiff's and Class Members' personal information, and therefore was unjustly enriched by the purchases made by Plaintiff and the Class that they would not have made had they known that Filters Fast did not keep their personal information secure.

141.     Plaintiff and the Class have no adequate remedy at law.

142.     Under the circumstances, it would be unjust for Filters Fast to be permitted to retain any of the benefits that Plaintiff and Class Members of the Class conferred on it.

143.     Filters Fast should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and Class Members proceeds that it unjustly received from them. In the alternative, Filters Fast should be compelled to refund the amounts that Plaintiff and the Class overpaid.

**<u>COUNT VI</u>**
**DECLARATORY JUDGMENT**
**(on behalf of Plaintiff and the Nationwide class or,**
**alternatively, Plaintiff and the Virginia subclass)**

144.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

145.     Plaintiff and members of the Nationwide Class and Virginia Subclass ("the Class" for purposes of this count) entered into an implied contract that required Filters Fast to provide adequate security for the personal information it collected from their payment card transactions.

146.     Filters Fast owes duties of care to Plaintiff and the members of the Class that require it to adequately secure personal information.

147.     Filters Fast still possesses personal information regarding the Plaintiff's and the Class Members.

148.     Since the data breach, Filters Fast announced no changes to its data security to fix the vulnerabilities in its systems which permitted the intrusions and to prevent further attacks, and no changes to Filters Fast's data security were mentioned in the Notice of Data Breach sent to Plaintiff and Class Members.

149.     Accordingly, Filters Fast still has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Filters Fast's lax approach towards information security has become public, the personal information in Filters Fast's possession is more vulnerable than it was previously.

34

150.     Actual harm has arisen in the wake of Filters Fast's data breach regarding its contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their personal information and Filters Fast's failure to address the security failings that lead to such exposure.

151.     There is no reason to believe that Filters Fast's security measures are any more adequate than they were before the breach to meet Filters Fast's contractual obligations and legal duties.

152.     Plaintiff, therefore, seeks a declaration (1) that Filters Fast's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Filters Fast must implement and maintain reasonable security measures, including, but not limited to:

    a.     Ordering that Filters Fast engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on its systems on a periodic basis, and ordering Filters Fast to promptly correct any problems or issues detected by such third-party security auditors;

    b.     Ordering that Filters Fast engage third-party security auditors and internal personnel to run automated security monitoring;

    c.     Ordering that Filters Fast audit, test, and train its security personnel regarding any new or modified procedures;

    d.     Ordering that Filters Fast segment customer data by, among other things, creating firewalls and access controls so that if one area of Filters Fast is

35

compromised, hackers cannot gain access to other portions of Filters Fast's systems;

e.     Ordering that Filters Fast purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

f.     Ordering that Filters Fast conduct regular database scanning and securing checks;

g.     Ordering that Filters Fast routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach, and

h.     Ordering Filters Fast to meaningfully educate its customers about the threats they face as a result of the loss of personal information to third parties, as well as the steps its customers must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes described above, seeks the following relief:

a.     An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

b.     Judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, attorney's fees, statutory costs, and such other and further relief as is just and proper;

c.        An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.        An order requiring Filters Fast to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.        A judgment in favor of Plaintiff and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, and

f.        An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: October 27, 2020        Respectfully submitted,

*/s/ Martin A. Ramey*
Joel Rhine, NC SBN 16028
Martin A. Ramey, NC SBN 33617
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Rd., Suite 300
Wilmington, NC 28403
Tel.: (910) 772-9960
Fax: (910) 772-9062
jrr@rhinelawfirm.com
mjr@rhinelawfirm.com

Gary E. Mason (pro hac vice forthcoming)
DC Bar. No. 418073
David Lietz (pro hac vice forthcoming)
DC Bar No. 430557
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel.: (202) 640-1160
gmason@masonllp.com
dlietz@masonllp.com

*Attorneys for Plaintiffs and the Proposed Class*

37